Mr. Clerk, the fourth and final case on today's call, 219-107, Maressa Bean v. Ingrida Krysiak. On behalf of the appellant, Mr. Dane J. Luizzo. On behalf of the appellee, Ms. Renee A. Fox. Mr. Luizzo, you may proceed. Thank you, Your Honor. Good afternoon, and may it please the Court. Again, Dane Luizzo on behalf of the appellant. Your Honors, as you know, we're here for... Our appeal essentially rests on two main issues. The first being, was the issuance of the plenary order of protection appropriate or against the manifest weight of the evidence? Second issue being, was the remedy that was crafted by the trial court proper or was it an abuse of discretion? And as set forth in our briefs, I believe that the first issue is certainly the most pertinent, which is the actual issuance of the plenary order of protection. And based upon that, I think that there's essentially two main ways to view the decision of the trial court. There is the very narrow, fact-specific question of, was the evidence or was the decision supported by the evidence? And as set forth in our argument in our brief, I believe that it is a manifest weight standard of review. And under that manifest weight, what I believe is the appropriate way to look at it is whether or not the evidence as set forth before the trial court would give rise to the issuance of the plenary. And when you look at the trial court's decision, which is set forth in great detail, and the trial court at the end of the hearing went through each of the specific incidents or alleged incidents, and there were six of them, six incidents, and addressed each in turn. And at each of those steps, the trial court told us or found that there was no physical abuse. So what the trial court ultimately said was, this isn't a case about physical abuse, ultimately found that the issue was harassment, that the appellant, the stepmother, had harassed her 7-year-old stepdaughter. When you look, however, at each... You're saying that harassment isn't part of the statute? Oh, actually, it absolutely is. But the question becomes whether or not the actions, number one, constitute harassment, and number two, whether or not the, as the trial court put it, the environment and atmosphere that was created constitutes harassment. And harassment is defined both in the statute and through our case law. And I would submit to Your Honors that nowhere in the record was there any evidence of what would rise to the level of harassment. When you look at the... When I look at, essentially, the stare decisis and look at all the case laws that define harassment, and you look at it, there's certainly no bright-line test for, this is harassment, this isn't harassment. But when you look at the case law that we have as to what generally constitutes harassment in the context of an order of protection, what we have here, I would submit, it doesn't come close. There are cases that deal with harassing conduct between adults. And I don't think that that's... Does emotional abuse of a child fall under the definition of harassment? Again, I think that that is... The easy answer would be yes, emotional abuse under certain circumstances could. But I would submit to Your Honor that we don't have emotional abuse here. What we have and what the trial court found is that the harassment was based upon alleged comments that were made to the child. And I believe that the trial court said when, after going through each of the incidents and saying, is that abuse? No, that's not abuse. Is it bad parenting? Sure. Is this abuse? No, it's not abuse. It's not an order of protection. But is it bad parenting? Is it improper? Yes. And when the trial court finally got to its decision, and essentially the way that it reads is that it turned on what the court found was harassment, was comments allegedly made from the appellant to the minor child. And the trial court said, well, when you tell a child that she has bad genes, when you tell a child that she has ADHD like her father or is going to end up in prison because she's a liar like her mother, the problem with that finding made by the trial court is that that didn't happen. And the record makes clear that that did not happen, because what the trial court was referring to were comments allegedly ascribed to the appellant to another adult not in the presence of the minor child. The minor child wasn't even there. I objected during the hearing as to saying, well, why is it relevant if the child isn't there and it's not said to the child? I was overruled. But then at the end of the hearing, those were the very reasons that the court found that there was harassment. She said, the trial court said, it is harassment because who tells that to a child? There's no reasonable purpose for it. And it was based on a mistake. And that is why I believe that the manifest weight, it's an error in the evidence. Because when you look at the record, there was no comments made to the child about the child in her presence or directly at her. So when the court conflated those statements and then used those as essentially the basis for the issuance of the plenary order of protection, that is where I believe the error lay. And when I talked about looking at this both in the, I guess for lack of a better term, the micro or the macro, from a very narrow perspective, I think just looking at the court's own statement as to that is what constituted harassment, was these statements made to the child. That is clearly erroneous because those statements were not made to the child. So then what we're left with is the court simply stating. I think your argument sounds like you're saying that it's not valid to argue a harassment by proxy. Well, if we're talking about a harassment by proxy, it would be one thing, Your Honor, if the appellant told another adult this child has problems, go tell her that she's got problems. You direct another person to go harass the child. That's not what happened here. When you look at the context in which these alleged statements were made, this was the first contact between the stepmother and the new babysitter. And she's telling her during the course of an hour car ride, here's the three children you're going to be watching, I'm apprising you of, here's the little fella, here's what he likes to do, here's the big sister, here's what you've got to watch out with her, and here's Faith. Here's what you've got to watch out with her, here's what she likes to do. So this wasn't harassing conduct, number one, directed to the child, and number two, it wasn't harassment, as Your Honor said, by proxy, to simply say, well, I'm not going to do it, but you go do it. So I guess there could be a hypothetical situation where, sure, could I tell somebody to go harass another person and that would be harassment by proxy? I suppose, but in the context of this case and the facts of this case, it's not there. So when we're looking at that issue, simply based on the manifest way, I would submit that that's where the error is. But then when we expand the scope and we look at this issue as to what is allowable conduct by a parent or a person in loco parentis, which I would submit as a stepmother who has essentially raised this child since I believe she was three years old and was now seven, and this is the person that she knows as Mommy, to say that you are not allowed as a parent to raise your voice too much or you are not allowed to yell at your children, that you are not allowed to deprive them of ice cream or television as a punishment for lying repeatedly to their teachers, I would submit to the court that that is very much in the province of what a reasonable parent is allowed to do with their children. And again, I acknowledge that there's no bright-line test. There's no rule that says this much yelling is too much. This much yelling is too much. This much punishment is too much. This much punishment isn't enough. But that's why parents are invested through our Constitution to essentially make decisions as to how to best parent their children. And when we take out the issue of physical abuse, because as the trial court found, this isn't an issue of physical abuse. This becomes an issue of how are we parenting children or how is the appellant parenting her child? And to be more specific, sure, her stepchild. But there were six specific incidents that were alleged to have occurred. And when you went through each and every one of those six specific incidents, two of them were in the distant past. Two of them were from, I believe, the first was 2014 at a picnic where allegedly the appellant yelled at the child because she said she couldn't go play until she finished her eating. The second incident was in 2015 when the child was picked up from daycare and then they were sitting at a restaurant and allegedly she yelled at the child to sit still and be quiet. The appellant yelled at the child to sit still and be quiet. The trial court said, that's bad parenting. Who does that? And that very well might be the finding of the court, that it's bad parenting. But we have vehicles for testing bad parenting, and that would be a motion to modify the allocation of parental decision making. We didn't do that here. This was an order of protection, and the order of protection alleged and has to prove that this is abuse. Are you suggesting that this is the wrong, or the trial court was the wrong forum for the remediation of whatever was wrong? I believe that this was a tool that was used to get an upper hand in a modification of allocation, which in fact, the facts bore that out because within a week there was a motion for modification of custody filed in the circuit court. And essentially the thesis or the basis of that change in custody was stepmom now has a plenary order of protection against her, so we have to change, and I'm using an archaic word, but we have to change custody. Are we allowed to take that into consideration? Is that part of the record? That is not part of the record, Your Honor. But I don't think we even would need to get there for purposes of this proceeding because when you look at, again, as I was saying, the more macro effect of this, you have a question of even if all of this is true, does it rise to the level of harassment of a child? And as we've cited in our argument, a reasonable, when you look at what a reasonable person, the emotional effect that a reasonable person may have, it's different for a child than it is for an adult. And it's even further differentiated between the relationship between a parent and a child because parents treat children way differently than typically they're going to other adults or their peers. You're not reprimanding or yelling at or grounding or depriving of ice cream or depriving of television other adults, but you are doing that to your children. The trial court made certain findings of fact regarding the effect that this had on the child, hanging her head and so on, correct? Yes, that's correct, Your Honor. I mean, would that show some type of, not emotional abuse, but harassment or effective harassment? I don't believe it does because those, you cannot differentiate, based upon the evidence that was adduced at the trial court, you cannot differentiate between those effects and the effects of just a child who's getting grounded or losing her iPad or losing her television because she's live. So there was no expert to testify. There was no guardian ad litem that was able to do an investigation and offer recommendations to the court. All we had and all that was based on was a 22-year-old nanny who had been involved in this child's life for, I believe, a total of 10 days, sweeping conclusory statements that it seemed like she was really sad. It seemed like she would put her head down. Well, I would submit to the court that I would expect nothing less from a 7-year-old. I have three children. It's not part of the record, but if I yell at my kids... Should it be? Should it be? That you have children, should that be part of the record? I guess it is now that I've said it, Your Honor, but it should. It's probably an inartful way of saying I would expect nothing less, and I'm sure that Your Honors know that being around children, if a 7-year-old child gets reprimanded or yelled at or grounded or deprived of their favorite things, they're not going to be happy. They're not going to be acting the same way that they would be when they're out playing with their friends. I would expect a 7-year-old child to hang their head, to be sad. So to say that that means... Respectfully, counsel, you said there were no experts, and you're offering your own perspective and opinion. It depends on the 7-year-old. It certainly does, and I would agree with that, Your Honor. But I think that goes to Justice Burke's questioning of can we take this child hanging her head as essentially proof of emotional distress due to harassment. No, it's whether it was against the manifest way for the trial court to so consider. Well, I think it was, because there was no evidence other than essentially an observation that a child hung her head or a child acted sad. So Justice Juergen said I would submit that, yes, it was against the manifest way to make that finding, because essentially that was a conclusion unsupported by anything other than a mere observation of a child holding her head. And there was not established, I believe, by... The trial court was not established that the person who said she was hanging her head or the person, the bell, the babysitter or the nanny, it was not established that she had any history with the child, that she would be able to know that. In fact, I believe that the record shows that she would do this when the appellant wasn't even present, that she would hang her head or be sad. So to tie back to the very specific instances that were the very specific alleged incidents that were set forth before the trial court and then to make the logical leap to, well, this constitutes harassment, I think is not supported by the evidence that went before the trial court. Your time is up. You'll have an opportunity to make rebuttals, sir. Thank you. Thank you, Your Honor. Ms. Buxton, is that how you pronounce it? You may proceed. Good afternoon, Your Honors. We have pleased the Court. My name is Renee Buxton, and I represent the appellee, Marisa Bean. The trial court's decision to enter a plenary order of protection must be affirmed. I am not suggesting here today that the law prohibit a step-parent from disciplining or even yelling at a child. But what happened here was very different. The evidence in this case showed that stepmother engaged in a pervasive pattern of harassment against her 7-year-old stepdaughter. Her conduct far exceeded what was necessary to accomplish any reasonable purpose. In other words, her conduct, by any measure, is not reasonable direction by a parent. How does conduct outside the presence of the child constitute harassment of that child? I would submit that conduct outside the presence of the child may not. However, where I disagree with opposing counsel is that there were many instances in the record where stepmother said things directly to the child. And the things that she said to others I think just lends to the credibility that if she can say it to another person and complain of this child and make these comments, it just makes it more credible that she would say these things directly to the child. The trial court made specific findings. I'm trying to recall whether the trial court made any specific findings about the things that the Respondent actually stated to the child. I will address the trial court's decision because I know that's something that opposing counsel brought about. The trial court's decision does make reference to six or seven specific instances. Now, although it doesn't rehash all of the evidence that heard specifically about what stepmother said to Faith in its decision, the court did find that every time she said those things to Faith, she destroyed a little bit more of Faith. And that's what the court found was harassment. And this court can affirm on any basis supported in the record. So even though the trial court's decision didn't say, and at the restaurant, this is what she said, and at the bus stop, this is what she said, and on January 2nd, this is what she said, that's all in the record. And so based on Inmate of the Marriage of Holtorf, this court can affirm on those basis. It isn't necessarily limited by what the trial court's rationale or our arguments. You would agree that the vast majority of the allegations in the petition were not proven, at least according to the trial court. I would say that the physical abuse was not proven. There was physical abuse alleged in the petition. In the verified petition, there was also many examples of the emotional abuse. They talk about the December incident, the pulling of the hood, her saying to the child, you're going to end up in jail just like your mother,  and this was also in the petition, said that she witnessed emotional abuse. So I think that even though the physical abuse wasn't, the harassment was definitely proven. If these acts continued after two years and the child went back, or I should say the stepmother went back home and was present during the child's presence, and the same acts occurred, would that then indicate that there should be a separation for another two years? And thereafter another two years, and thereafter another two years until the child is an adult? If stepmother continues to harass and continues to say these things, she is causing emotional abuse to this child, and it could, presumably there could be other remedies that would take place before it got to that, but the court needs, looking at the intention of the act, it's to protect those who are abused. And if stepmother's conduct rises to the level of harassment, which it did by the things that she said, then the plenary order of protection needed to issue. How does this remediate anything, just removing the stepparent for two years? Again, I think the court needs to go to the intent and the purpose of the act. And I think that the court, in fashioning the remedy, sort of discussed that. They said, well, you know, supervision wasn't an option, and what the court needs to do is to keep Faith away from the abuser, which is the stepmother. There's all kinds of options other than just keep away for two years, and then after two years, where are we? I mean, we're no closer to reunification. I mean, assuming the natural father stays married to the stepmother, the child's now nine, and now has these people in her life, and what happens then? I mean, it just seems like the trial court, to some degree, washes its hands for two years, and then we pick up in two years from where? There are all kinds of remedies that could be. If you read Peck v. Yotten, I mean, the court was reversed on that basis. I mean, you could have counseling, you could have a J.L. appointment, you could have all kinds of things happen, supervised visitation. I mean, there's all kinds of things short of a separation for two years. Well, in Peck v. Yotten, I believe that was between biological father and the child. So here it's the stepmother, and I understand that she's in the house and she's married to father. But in looking at whether to enter the order of protection or not, I think the court also has to balance some of those hardships. But first and foremost is protecting the child who is abused. There was little evidence presented, in fact, I don't know if there was any evidence, about balancing the hardships. What were the options? And so the court said it found, specifically found it had no alternative. Did the trial court not go through a number of these incidents and basically say that an order of protection would not issue because of this? An order of protection would not issue because of this? And then went on, and then at the end, rambled off a litany of things that, according to the record, were not said in the presence of the child, and said this proves the harassment. Yes, that is what the trial court said. But I think what the trial court was saying is it's the cumulative effect of all of this. Yes, perhaps if it was just one incident that we were talking about, that wouldn't be abuse, but it's this pattern. And the statute, the definition of harassment, looks also to repetitiveness and a pattern, and I think that's what the court was saying. If you took one little thing in a vacuum, maybe that wouldn't be harassment. There's all of these things, and that gives you harassment. And that couldn't have found its way into a motion to change custody or to change parenting time, whatever we're calling it nowadays, as opposed to an order of protection, which also carries with it loss of a FOID card and loss of credit for good time if you're in prison. I mean, there's a litany of things that you lose when you have an order of protection against you. Admittedly so. But I think given the circumstances of that event, here we have the culminating event on January 2, 2019, which is where the nanny hears this 20 to 30-minute upset mother just yelling at her. She tells her to shut up. She tells her to, I'm going to hit you. It's going to hurt. All we hear is Faith crying and screaming. That nanny is so bothered by that that the very next day she walks away from a paying job and goes to the police. And the fact finder found that it didn't know what happened during that incident. Basically made a finding. I don't know if there was abuse during that incident, physical abuse. There's no evidence of it. There's no bruising. There's no marks. Again, we're left with this balancing between bad parenting and an order of protection. Where's the line between being a bad parent, because there's a lot of people out there that would have an order of protection slapped on them, and harassing? That seems like a pretty big chasm to me. Have you leapt over that chasm? No, because I think what they're arguing, or perhaps what Your Honor is saying, is if this is discipline, this is how she parents. Discipline. Parenting is to provide support and guidance. Discipline intends to create a change, to teach. When you say to a 7-year-old at a bus stop in front of people, are you going to end up in jail just like your mother? And look at the circumstances around that. She accidentally steps on her brother's foot. She gets berated about lying, which was an incident that happened. Weeks before, the day before, and then gets to the bus stop, and she says, are you going to be one of those bad kids? Are you going to end up in jail just like your mother? And then puts her on the bus and sends her to school. So I think that's the difference there. That's the difference between just disciplining somebody, or parenting, and harassment. And this isn't just one incident. This goes all the way back to when this child was 4 years old. Is there any difference between neglect under the Juvenile Court Act and harassment under the Order of Protection law? Well, there is no neglect provision under the Order of Protection statute. So I don't know if that answers your question. Well, I mentioned that neglect was under the Juvenile Court Act. Correct. So my point is, are these legal concepts that, taken a set of facts, you might have neglect, you might have harassment, you might have both, or you might have neither. In this situation, we could have the same parameters. We could have possibly neglect, we could have harassment, both or neither. Which is more severe? Is abuse more severe than harassment? And I say that because abuse, or neglect, is based upon nonfeasance, usually, or misfeasance done in a harmful way. Harassment strikes me as being something based upon the facts in this case and your argument as to be intentional or with reckless disregard. So am I correct in thinking that harassment in the constructs of this case, or the factual circumstances herein, is supposed to be something that is more, requires a greater level of mens rea or intent than neglect would? In other words, can you neglectfully harass someone? No. I think harassment takes intent. I think harassment takes knowledge. There needs to be an intent to harass. And it needs to be knowing conduct that's right in the definition. And I think, looking specifically at the things that Stepmother said, there was no other reason, no other purpose for her saying this but to degrade this child, embarrass this child, and upset this child. Mr. Louiso was saying that there's different types of harassment based upon the different statuses or ages of the interacting individuals. And I have to admit that in my lifetime I've been a parent. And so I've been in situations where I may have harassed my child because they wouldn't do something that I wanted them to do. And I think the harassment statute talks about attempting to accomplish or achieve something in an unreasonable way. Is that not what, does that ring a bell? The harassment under the Earth Protection Act means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances. And when you're dealing with a child, some children are not reasonable. And therefore, if you're going to act in a reasonable way, the probability of success on the merits is nil. So if you're dealing with a child who's not reasonable or irrational or as maybe we all have experienced when they get so tired they just cry and there's nothing you can do except bite your tongue and accept the fact that they're going to have to cry out, correct? I would agree. And so when you start talking about applying reasonableness to the criteria of the actions that are taken, is it not suspect when supposedly the actions that are being taken are supposed to effectuate some result directed at someone who isn't necessarily being rational or reasonable? My answer to that is in looking at harassment from a deaf parent to a child or parent to a child, you need to also consider some of the circumstances around that. Not just what was said, the words used, but how, the demeanor, the tone. When was it said? Where was it said? How was it said? I'm looking at the case of People v. Green, which was an excessive corporal punishment case and was not harassment, but those factors are somewhat illustrative to perhaps answer the question of how do you reasonably deal with an unreasonable child. There this court looked at the psychological effects on the child and whether the discipline was initiated calmly or was it lashing out in anger. And I submit to the court that in the record there are numerous incidents where what stepmother says to Faith and how she says it and where she says it and when she says it makes it not discipline, makes it not just an upset parent who's dealing with an unruly child. It's harassment. She's doing it for one reason, and that's to degrade and humiliate and embarrass this child. I think the nuns at my grade school might disagree with you, but that's okay. They seem to enjoy that. Would you like to address the remedy? The remedy? Yeah. Once the trial court finds abuse, it must enter a norm of protection. The question with the remedy here is I think the trial court did weigh things. If you read her decision, she talks about supervision would be great, but it's not an option. And the problem with that was because Father stood by and let this happen. He didn't protect Faith. So the only way for her to be protected was to have stepmother stay away from her. I mean, that's not the only supervision. I mean, there's all kinds of stuff. Every county now has a place you can go when you have supervised visitation, don't they? But stepmother doesn't have supervised visitation, right? Well, in the order of protection, you could order visitation to supervise. We could, but. It doesn't have to be by the father. It could be by somebody else. That is correct. But I think we also have to consider Faith. I mean, Faith should be able to be in her house. May I finish my question? Yes. Be in her house. There was no evidence presented that there was any viable alternative. And I think the court did balance the hardships and must consider Faith and protect Faith. For those reasons, I believe that the trial court's decision must be affirmed. Okay. Thank you. Mr. Liesel, you may proceed. Thank you, Your Honor. I believe that the RAD2 case, which was cited in our briefs, speaks directly to what Your Honor, Justice McLaurin, was referring to, which states that it has been recognized that reasonable restrictions imposed by a parent on a child might be quite unreasonable in the context of an adult relationship. And I think that that is the case. That's how I took Your Honor's question, which is that what you might do with your children is different than what you do in general society with other adults because the effects are going to be different for a child that you're parenting as opposed to another adult that you're dealing with in your day-to-day existence. So I think that the RAD2 case stands exactly for that proposition. And addressing the issue as to fashioning the appropriate remedy, as Justice Burke pointed out, this, well, I would argue that this was essentially the most draconian and extreme remedy that could have been fashioned by the trial court. What did you ask for? I asked for the issuance of no order of protection. I get that. But assuming that you lost at that point and then there was argument on the remedy, what did you ask for? What did you propose as being reasonable? I don't recall if I proposed anything, Your Honor, because I don't know that I was given the opportunity. It escapes my mind as to how that played out. And I guess my simple answer is I just don't remember offhand in reviewing the record as to that. But there are alternative remedies that are available in the order of protection form itself. Those remedies include counseling. That counseling could include parenting classes. It could include anger management. It does include supervised visitation or supervised parenting. So to simply, if the goal is to look at the best interests of the child, I think that you have to look at the child's life and how this then affects the child. Because this child doesn't exist in a vacuum. This child has two siblings. This child has a home life that has essentially been upended by saying, your stepmother, who has been married to your father, can now not be around you for two years. And it sets up a situation where there's terrible choices that have to be made as a family unit, which is if we want Faith to be around her siblings, then Mom can't be there. If Mom wants to be around the other two siblings, Faith has to leave. It throws the family unit into upheaval. And that's why, as we argued in our brief, I believe that the remedy as fashioned by the trial court was an abuse of discretion because it was the most extreme. And I think that speaking to – But that's my question. You stand here now and say the trial court just grossly abused its discretion, but you often know alternatives at the time. As to the fashion of the remedy, Your Honor, as I said, I – I appreciate that, but you're saying now, gee, they could have done this, could have done could have, could have, could have, could have, and yet that was not presented to the trial court as a viable alternative. Well, I – I know that the trial court – again, I don't want to speak out of turn, and I don't remember if it was at my suggestion or not, but as to – But you see, my point is you're arguing now these are all the things the trial court should have done and therefore it was an abuse of discretion not to do those things, and yet you can't tell me what you argued to the court at that time. Now, I appreciate your memory. We're all getting – I forget things, too. But – If I recall correctly, I had – And that was why then when opposing trial counsel said we can't – in her argument says we can't do supervised visitation because dad would be the supervisor and it just doesn't work because he's – I don't think these are the words I'm paraphrasing, but just as guilty as mom because he let it go on. So that was my suggestion, if I recall correctly. And the trial court addressed that, I do know, in the decision, because I know that the trial court said, well, I can't do supervised visitation because dad is – and I think her exact words were is guilty of neglect, and therefore he's not the appropriate supervisor. So therefore, I can't have – Did you – did anyone suggest to the trial court that perhaps this is – obviously she's found it's a significant problem, that counseling addressed the problem? Because as Justice McLaren said, what happens at the end of two years? At that point – If nothing has changed? At that point, Your Honor, I was not – once the court had made its decision, I was not given an opportunity to brainstorm other alternative remedies or ideas. I made my closing argument. They – I had made my suggestions, and the trial court was – at least the way it was conveyed to me, my opinion wasn't necessarily welcome at that point because the trial court had decided that this was harassment, that an order of protection for two years was appropriate, and that she was not going to consider supervised visitation because dad is guilty of neglect, and there were no other alternatives to supervise. And that's where it ended. So if Your Honor is asking me, did I throw out other ideas – Well, you are – I mean, because you're – the tenor of my point is that you're arguing now what the trial court should have done, but yet no one presented that. So, I mean, I see your dilemma. You're saying, hey, she'd made up her mind, and she wasn't listening to me. Okay. But that does put us in somewhat of a predicament as you're saying all these things were there, and yet no one raised them at the time. Well, I think I did. And again, I can't speak 100 percent to that, Your Honor, but I think I did, and I'm always very cognizant to not overstep my bounds with the trial court. And after, I believe, three days of hearing, it was pretty clear to me that once I had my say, that it was her turn to talk. It was the trial court's turn to talk and issue her decision. And she did. And I think I even asked, Your Honor, would we be allowed – because now I do remember. I did ask, well, can we accept, say, school events or school functions and still maintain the order of protection and have some guidelines where a stepmom could go and see a school play or a school function, and the court said no. We couldn't do that because there wouldn't be appropriate safeguards. So I did the best I could under the circumstances as to throwing out ideas once I knew that the order of protection was issuing, but it was clear, I believe, from the transcript that the trial court said that that's not a viable alternative. Any other questions? Thank you. We will take the case under advisement. There are no other cases on the call. Court is adjourned.